UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| DARYL ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3: 08-34-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| THETA OWENS, LPN, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

A summary of *pro se* Plaintiff Daryl Adams' claims is contained in this Court's Order entered August 14, 2008. Briefly, Adams alleges that several jail employees were deliberately indifferent to his medical needs while he was incarcerated at the Carroll County Jail (December 29, 2006, to May 10, 2007) and the Henderson County Detention Center (May 10, 2007, until approximately August 23, 2007). Following initial screening, the Court dismissed the claims asserted against Carroll County Jail personnel on statute of limitations grounds. [Record No. 5] However, the Plaintiff was allowed to proceed against the remaining two defendants employed at the Henderson County Detention Center ("HCDC"): Theda Owens, LPN, and Jailer Rod Herrington.

On June 15, 2009, Defendants Owens and Herrington moved the Court for entry of summary judgment in their favor with respect to the remaining claims. In support of their motion, the Defendants argue that Adams has failed to exhaust the administrative grievance procedures available to persons incarcerated at the HCDC and that medical and other records

refute Adams' claims that medical personnel were deliberately indifferent to his medical needs. [Record No. 22] By Order dated June 30, 2009, United States Magistrate Judge Edward B. Atkins extended Adams' time for responding to the Defendants' motion through July 31, 2009. [Record No. 27] However, Adams has failed to file a timely reply to the motion.

Having review the materials filed in support of the Defendants' motion and having considered the relevant authorities, the Court concludes that both of their arguments are well-taken and that the Defendants are entitled to the relief sought. Accordingly, their motion for summary judgment will be granted and the Plaintiff's remaining claims will be dismissed, with prejudice.

**I.    RELEVANT FACTS**

    **A.    Adam's Medical Treatment At The Henderson County Detention Center And His Grievances**

The Defendants have provided records indicating that Adams was incarcerated at the HCDC from May 10, 2007, through approximately August 23, 2007. Theta Owens was employed as a nurse at the HCDC while Ron Herrington was the jailer at the facility during this time. Before his transfer from the Carroll County Jail, Adams had complained about a lip sore. The sore was treated as a fever blister using various medications.

Records submitted by the Defendants indicate that Adams did not immediately complain about lip pain at the time of his transfer to the HCDC (May 10, 2007). However, approximately one week later (May 18, 2007) he submitted a sick call slip indicating that he needed treatment for a cold sore, but did not need to see a doctor. [Record No. 22; Exhibit 1, pp. 2-3] On May 31, 2007, Adams submitted another sick call slip indicating that he had been told to follow-up

if the cold sore did not go away. Again, however, he stated that he did not need to see a doctor. [Record No. 22; Exhibit 1, p.5] Thereafter, during the period June 3, 2007, through June 20, 2007, several medications were provided to Adams in response to his lip complaints. [Record No. 22; Exhibit 1, pp. 6-7] Medical personnel also observed Adams' lip condition during this period.

Adams submitted several sick call slips during early June 2007. However, he did not repeat his complaints relating to his lip until June 13, 2007, when he indicated that he "would like to continue taking the antibiotic for my cold sore, since it is getting better, [but] not completely healed yet." [Record No. 22; Exhibit 1, p. 10] Progress notes for the period June 20, 2007, through August 2, 2007, indicate that Adams received ongoing treatment and that staff continued to observe his condition. [Record No. 22; Exhibit 1, p. 11] These notes indicate that the treatment provided appeared to help.

On August 1, 2007, Adams submitted a sick call slip and was scheduled for a doctor's appointment which occurred August 6, 2007. Following this examination, Adams was scheduled for a dermatology exam on August 22, 2007. [Record No. 22; Exhibit 1, p. 15-16]

On August 7, 2007, Adams filed a grievance regarding his lip condition. [Record No. 22; Exhibit 1, pp. 17-18] Through this grievance, Adams asserted that he was not receiving a particular ointment because it was too expensive. However, the response indicates that the medication prescribed was being given in pill form. [*Id.*] The following day, Adams complained that his lip was "extremely worse." [Record No. 22; Exhibit 1, p. 19] Further, on August 9, 2007, Adams filed a grievance regarding his lip, back pain, and drinking water at the HCDC.

Through this grievance, Adams also requested a transfer to a state facility. [Record No. 22; Exhibit 1, pp. 21-22]

A biopsy was performed on Adams' lip on August 22, 2007, by a dermatologist. On that same date, Adams filed a grievance seeking pain medication for the laser treatment performed by the dermatologist. [Record No. 22; Exhibit 1, pp. 23-24] However, Adams was transferred to the Roederer Correctional Complex on approximately August 23, 2007, before the HCDC responded to his third grievance. On September 11, 2007, the dermatologist who had performed Adams' lip biopsy contacted the HCDC to inform the facility that the biopsy revealed squamous cell carcinoma, and that an appointment had been made for Adams to see a plastic surgeon in Louisville, Kentucky, on October 3, 2007. [Record No. 22; Exhibit 1, p. 26]

### B.   The Henderson County Detention Center's Grievance Procedures

The Defendants have submitted a copy of the HCDC grievance procedure as Exhibit 2 to the memorandum filed in support of their motion for summary judgment. [Record No. 22; Exhibit 2] The standard for the procedures are taken from 501 KAR 3:140 and provides as follows:

> **Policy:**
> Any inmate shall be allowed to file a grievance at such time as the inmate believes he or she has been subject to abuse, harassment, abridgement of civil rights, or denied privileges specified in the posted rules. (Grievances must be restricted to incidents which occur while the prisoner is in custody of the facility.) No prisoner shall fear against reprisal for initiating grievance procedure in an attempt to resolve legitimate complaints.
>
> **Procedure:**
> 1.   Transmittal: A grievance shall be made in the form of a written statement by the inmate promptly following the incident, on an official grievance form. Such statement shall be transmitted promptly and without

    interference to the jailer by a detention officer or staff member to whom the grievance is given.

2.  Contents: The grievance shall state fully the time, date and names of those detention officers and/or staff members involved, and pertinent details of the incident including the names of any witnesses.

3.  Review: Upon receipt of a grievance by the jailer, the jailer shall review the grievance and determine if it constitutes:

  a.  a prohibited act by a detention officer or staff member
  b.  a violation of the inmate's civil rights
  c.  a criminal act, or
  d.  an abridgment of inmate privileges as cited in the posted rules.

4.  Investigation: If the grievance constitutes a prohibited act by a detention officer of staff member, a criminal act, or a violation of the inmate's civil rights, the jailer shall order a prompt investigation. If the grievance constitutes an abridgement of the inmate's privileges, the jailer may appoint an impartial member of the staff to investigate the grievance and made a report of findings and recommendations.

  **NOTE:**  **Any officer of staff member who subjects an inmate to harassment, curtailment of privileges or any type of punishment because of a grievance, or attempts to prevent or interfere with the reporting of a grievance, shall be subject to disciplinary action.**

5.  Response: Any inmate who submits a grievance to the jailer will receive a response in 3 days following the investigation of the grievance, to include findings and actions taken by the jailer.

6.  Appeal: If not satisfied with the disposition of the grievance by the jailer, the inmate shall be furnished paper, pencil, and an envelope in order to set forth his grievance in writing and his objections to the disposition of the grievance. The inmate's appeal letter will then be forwarded to County Judge/Executive.

[Record No. 22; Exhibit 2]

## II.  LEGAL ANALYSIS

### A.  The Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Barr v. Lafon*, 538 F.3d 554, 561 (6th Cir. 2008). Additionally, summary judgment is also appropriate where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *McDonald v. Petree*, 409 F.3d 724, 727 (6th Cir. 2005) (quoting *Celotex*, 477 U.S. at 322). In contrast, "summary judgment is inappropriate when the evidence raises a genuine issue of material fact." *Barr v. Lafon*, 538 F.3d 554, 561 (6th Cir. 2008). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Generally, the moving party bears the burden to show that no genuine issue of material fact exists "but that burden may be discharged by showing . . . that there is an absence of evidence to support the nonmoving party's case." *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008) (*citing Celotex*, 477 U.S. at 325). Once the moving party has met its burden of production, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Sigler v. American Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)).

In reviewing a party's motion for summary judgment, a court's function is not to "weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Barr*, 538 F.3d at 561 (*quoting Anderson*, 477 U.S. at 249). In doing so, all evidence must be viewed in the light most favorable to the nonmoving party. *Id.* However, a mere scintilla of evidence is insufficient defeat a motion for summary judgment. *In re Petty*, 538 F.3d 431, 439 (6th Cir. 2008). Rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Id.*

Ultimately, the standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52; *Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

In the present case, Adams has failed to respond to the Defendants' motion for summary judgment, despite being given sufficient time for a response. Accordingly, the Court has reviewed the materials submitted by the Defendants under the standard set out above.

### B. Adams Has Failed To Exhaust His Administrative Remedies.

Adams initiated the HCDC grievance procedure on at least three occasions in connection with his complaint regarding allegedly improper or deficient treatment of his lip condition. Through the official Grievance Form dated August 7, 2007, Adams complained, in part, that:

> I came to HCDC on May 10, 2007 - I went to the nurses station to get medicine for a cold sore - fever blister. Two weeks ago the doctor told the nurse to order ointment for my lip - today I saw the doctor again - he asked me if I used the ointment - I told him no, I wasn't given any ointment to use. He asked the nurse why I didn't get it – and her reply was – It was <u>too</u> <u>expensive</u>. . . .

The response contained at the bottom of the form (dated August 8, 2007) indicates that Adams was being treated with the same medication prescribed by the doctor, but not in ointment form. [Record No. 22; Exhibit 1, pp. 18-19]

On August 9, 2007, Adams filed another grievance complaining of several matters, including HCDC's failure to advise him of a boil water advisory. In relevant part, Adam repeats his earlier grievance regarding failure to obtain proper medical treatment for his lip condition. [Record No. 22; Exhibit 1, pp. 21-22] Finally, on August 22, 2007, Adams filed a third grievance to complain that he had not received pain medication and Neosporin® ointment for the laser treatment performed on his lip on that date. Adams was transferred before a response could be submitted to his final grievance. [Record No. 22; Exhibit 1, pp. 24-25] However, Adams did not appeal any of his grievances to the Henderson County Judge/Executive. This failure is fatal to his remaining claims.

As the Defendants correctly point out, under the Prison Litigation Reform Act, an inmate is required to exhaust his administrative remedies before initiating suit. Title 42, U.S.C. § 1997e(a) specifically provides that, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." As outlined above, the HCDC had in place at the time of Adams' incarceration a grievance procedure which was understandable and which would have allowed prompt resolution of his claims. However, Adams did not attempt to appeal any determination to the Henderson County Judge/Executive as he was required to do pursuant to ¶ 6. As a result, he has

failed to properly exhaust the administrative remedies available to him. *Woodford v. Ngo*, 548 U.S. 81 (2006); *Booth v. Churner*, 532 U.S. 731, 741 (2001). Summary judgment, therefore, is appropriate.

### C. Medical Records Refute Adams' Claim That The Defendants Were Deliberately Indifferent To His Medical Care.

To establish a claim for inadequate medical care under 42 U.S.C. § 1983, a prisoner must establish that jail personnel were deliberately indifferent to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976). Further, "indifference" must be substantial in that it must be shown to be offensive to "evolving standards of decency". *Id.* at 106. Simply put, inadvertent failure to provide adequate medical care, or negligent diagnosis and/or treatment of a prisoner, fails to state a cause of action. *Id.* at 105-06. As the Supreme Court explained in *Farmer v. Brennan*, 511 U.S. 825 (1994), deliberate indifference describes a state of mind more blameworthy than negligence and requires more than an ordinary lack of care. Instead, the official who is claims to have failed to act (or is claimed to have acted improperly) "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Id.* at 837.

In the present case, the records of medical treatment provided to Adams demonstrate that the Defendants were not indifferent to Adams' complaints. Instead, medical personnel responded to each of his complaints. On several occasions, Adams filed sick call forms, but indicated that he did not wish to be see a doctor. Further, medical personnel treated Adams for what was believed to be a cold sore until his condition was later diagnosed as skin cancer. The facts presented here simply do not support a claim of deliberate indifference according to the

standard set forth in *Estelle, supra,* and later decisions of the Sixth Circuit. *See Brooks v. Celeste*, 39 F.3d 125, 129 (6th Cir. 1994).

### III.    CONCLUSION

The materials submitted by Defendants Theda Owens and Ron Herrington establish that Plaintiff Daryl Adams has failed to exhaust available administrative remedies concerning several grievances involving claims of lack of (or improper) medical treatment while Adams was incarcerated at the HCDC. Further, the Defendants has shown that they were not deliberately indifferent to Adams' serious medical needs under standards established by the United States Supreme Court and recognized by the Sixth Circuit. Accordingly, summary judgment in the Defendants' favor is appropriate. It is therefore **ORDERED** as follows:

1.    Defendants Theta Owens' and Ron Herrington's motion for summary judgment [Record No. 22] is **GRANTED**.

2.    The claims asserted in this action by Plaintiff Daryl Adams against Defendants Theta Owens and Ron Herrington are **DISMISSED**, with prejudice.

3.    All claims having been resolved, this action will be **DISMISSED** and **STRICKEN** from the Court's docket.

This 4th day of August, 2009.



Signed By:
*Danny C. Reeves* DCR
United States District Judge